UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MICHAEL LEE GORDON,** *et al.,*

    **Plaintiffs,**                                  Case No. 2:05-cv-1011
                                                        JUDGE GREGORY L. FROST
    **v.**                                             Magistrate Judge King

**UNITED STATES OF AMERICA**

    **Defendant.**

### OPINION & ORDER

This matter is before the Court for consideration of a motion to dismiss, or in the alternative, a motion for summary judgment filed by Defendant United States of America ("Defendant"). (Doc. # 27.) Plaintiffs Michael Lee Gordon ("Gordon") and Linda A. Diles ("Diles") (collectively "Plaintiffs") have not filed a response. For the reasons that follow, this Court grants Defendant's motion for summary judgment. (Doc. # 27.)

### A. Background

On June 9, 1997, Gordon was arrested for a number of robberies under the Hobbs Act and several firearms violations. Gordon proceeded to trial and was convicted. On May 20, 1999, Gordon was sentenced to 137 ½ years incarceration and ordered to pay $8,459.75 in restitution.[1]

At the time of his June 9, 1997 arrest, Gordon was in possession of $1,837.00. Subsequently, the police confiscated this amount. On or about January 28, 1998, the currency was converted to a check and placed in the FBI property room. (Doc. # 24.) Pursuant to a note

---

[1] This Court notes that Gordon was also arrested on December 7, 1997. He had $347.12 in his possession, which by order of a court on April 8, 2002, was turned over to the Clerk's office to be applied to the restitution.

that Gordon sent to the FBI authorizing release of this money, his "cellular phone, and any other property that [he] may own to Mikalyn J. Paolucci," the FBI released $1,837.00 to Ms. Paolucci on March 2, 1998.  (Doc. # 28-2, Doc. # 28-3).

On January 9, 1998, the FBI also seized three rifles in connection with an ongoing criminal investigation.  On September 27, 2005, the FBI notified Diles by mail, advising her that in order to recover the three guns, she would have to prove ownership within thirty-days from the postmarked date of the letter.[2]  (Doc. # 28-5.)  Diles did not respond.  (Doc. # 26.)  On April 24, 2006, the FBI filed a "Declaration of Abandonment" in reference to the three guns at issue. (Doc. # 28-6.)

On September 25, 2006, Plaintiffs filed a Second Amended Complaint pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346 *et. seq.*, alleging –despite the undisputed facts aforementioned– that the FBI wrongfully seized and failed to return both the money and the guns.  Plaintiffs seek to have Defendant return the guns or reimburse Plaintiffs for the value of the guns.  Additionally, Plaintiffs request that Defendant return the confiscated money to Plaintiffs.

## B. Discussion

### 1.  Subject Matter Jurisdiction

#### a. Standard of Review

Preliminarily, Defendant moves to dismiss Plaintiffs' Second Amended Complaint (Doc. # 26) pursuant to Fed. R. Civ. P. 12(b)(1).  Under the Federal Rules of Civil Procedure, "[p]laintiffs have the burden of proving jurisdiction in order to survive a Rule 12(b)(1) motion . .

---

[2]  The connection between Gordon and Diles is unclear from the materials set forth by both parties.

. ." *Weaver v. Univ. of Cincinnati*, 758 F. Supp. 446, 448 (S.D. Ohio 1991) (citing *Moir v. Greater Cleveland Reg'l. Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)). *See also Rapier v. Union City Non-Ferrous, Inc.*, 197 F. Supp. 2d 1008, 1012 (S.D. Ohio 2002) (citing *McNutt v. General Motors Acceptance Corporation of Indiana, Inc.*, 298 U.S. 178, 189 (1936)); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)) ("The plaintiff bears the burden of establishing, by a preponderance of the evidence, the existence of federal subject matter jurisdiction.")

Moreover, a Rule 12(b)(1) challenge can either facially or factually attack the basis for subject matter jurisdiction. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004) (stating "[a] rule 12(b)(1) motion can either attack the claim of jurisdiction on its face in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists"). The Sixth Circuit has recognized this distinction and applied this standard to Rule 12(b)(1) challenges. *DLX, Inc.,* 381 F.3d at 516; *see also Rogers*, 798 F.2d at 915 (stating that "on a Rule 12(b)(1) challenge to subject matter jurisdiction, the court is empowered to resolve factual disputes").

### b. Analysis

In this case, it appears that Defendant is making a facial attack on this Court's subject matter jurisdiction. Defendant contends that, even assuming Plaintiffs' allegations are true, this Court lacks subject matter jurisdiction under the doctrine of sovereign immunity. Despite the fact that the FTCA broadly waives the United States' sovereign immunity, Defendant argues that Plaintiffs' claims in this case are barred by one of the exceptions found in 28 U.S.C. § 2680(c).

Defendant insists that pursuant to § 2860(c), it retains its immunity for the alleged damages in this case because it was incurred in the course of a search and seizure undertaken by a "federal law enforcement officer." According to Defendant, since FBI agents are law enforcement officers and this suit arose out of the detention of Plaintiffs' property, the suit should be dismissed for lack of subject matter jurisdiction. This Court is unconvinced. This Court finds that Defendant ignores Sixth Circuit precedent and thereby misconstrues the meaning of § 2860(c) as applied in the Sixth Circuit.

The FTCA is a limited waiver of sovereign immunity. Sovereign immunity, unless waived, bars all suits against the United States and its agencies. *See, e.g.*, *Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied. Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope in favor of the sovereign.") The FTCA waives sovereign immunity to the extent that it authorizes civil actions exclusively in federal courts for money damages against the United States "for injury or loss of property, or personal injury or death caused by any employee of the Government while acting within the scope of his office of employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

The FTCA's broad waiver of immunity, however, is subject to enumerated exceptions. 28 U.S.C. § 2680(a)-(n). One of those exceptions, 28 U.S.C. § 2680(c), provides that § 1346 shall not apply to "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of

4

customs or excise or any other law enforcement officer."

The Sixth Circuit first addressed the application of § 2680(c) to law enforcement officers other than IRS agents in *Kurinsky v. United States*, 33 F.3d 594 (6th Cir. 1994) (plaintiff's property seized during execution of a search warrant was mishandled, damaged, and allegedly not returned in full to the plaintiff). In *Kurinsky*, the Sixth Circuit recognized that since the Supreme Court had "refused to determine whether § 2680(c) applies where officers who detained the property were not customs or tax officials and were not acting in a customs or tax capacity," their inquiry "into the scope of § 2680(c)" began on "a clean slate." *Id.* at 596 (citing *Kosak v. United States*, 465 U.S. 848, 852 n.6 (1984)).

The Sixth Circuit held that § 2680(c) is "limited to the detention of goods by law enforcement officers *acting in a tax or customs capacity.*" 33 F.3d at 598; s*ee Ortloff v. United States*, 335 F.3d 652 (7th Cir. 2003) (excluding Bureau of Prisons Officers ("BOP") from the meaning of "any other law enforcement officer"); *Bazuaye v. United States,* 83 F.3d 482 (D.C. Cir. 1996) (excluding postal inspectors). Thus, according to the Sixth Circuit's analysis, whether a court has authority to exert jurisdiction over the United States is contingent on whether the law enforcement officials were engaged in activities related to the collection of taxes or custom duties. *Id.* Courts therefore have jurisdiction over all FTCA claims brought against law enforcement officers for lost or damaged property who were not acting in a tax or custom capacity.

Here, the FBI was not acting in a tax or customs capacity when they lawfully confiscated Plaintiffs' money and guns pursuant to a criminal investigation. Thus, this Court has subject matter jurisdiction over Plaintiffs' FTCA claim brought against Defendant.

This Court notes, however, that the Fifth, Eighth, Ninth, Tenth, and Federal Circuits have adopted a more expansive view of § 2680(c). It has read the phrase "any other law enforcement officer" broadly. These Circuits interpret the phrase "any law enforcement officer" literally to include any federal officer who has detained goods in the performance of his or her duties. Thus, § 2680(c) arguably exempts the United States from liability for damages resulting from the detention of property by any government employee during the scope of his or her employment in these circuits. *See, e.g., Chapa v. United States Dep't of Justice,* 339 F.3d 388, 390 (5th Cir. 2003) (including BOP officers within the meaning of "any other law enforcement officer"); *Cheney v. United States*, 972 F.2d 247, 248 (8th Cir. 1992) (including drug task force agents); *Bramwell v. United States Bureau of Prisons,* 348 F.3d 804, 807 (9th Cir. 2003) (including BOP officers); *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002) (including BOP officers); *Schlaebitz v. United States Dep't of Justice*, 924 F.2d 193, 195 (11th Cir. 1991) (including US Marshals); *Ysasi v. Rivkind,* 856 F.2d 1520, 1524 (Fed. Cir. 1988) (including Immigration and Naturalization Service agents). These decisions, however, are not binding on this Court.

**2. Fed. R. Civ. P. 12(b)(6) or Alternatively Summary Judgement**

    **a. Standard of Review**

Given that this Court has subject matter jurisdiction over Plaintiffs' FTCA claim, Defendant also moves to dismiss Plaintiffs' Second Amended Complaint (Doc. # 26) pursuant to Fed. R. Civ. P. 12(b)(6) or alternatively for summary judgment pursuant to Fed. R. Civ. P. 56(c). Defendant has attached additional material outside the pleadings, in the form of five exhibits, with its present motion. This Court will consider this evidence, and therefore, this Court is required under Fed. R. Civ. P. 12(b)(6) to treat Defendant's motion (Doc. # 27) as a motion for

summary judgment.  *See Bohne v. Erie County Sheriff's Dept.,* No. 3:38-CV-7643, 1999 WL 690188, at *5 (N.D. Ohio Aug. 26, 1999); Fed. R. Civ. P. 12(b)(6) ("If, on a motion asserting the defense numbered (6) . . . matters outside the pleading are presented to . . . the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . .").

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The initial burden of showing the absence of any such "genuine issue" rests with the moving party: it must inform the district court of the basis for its motion, and identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.  Fed. R. Civ P. 56(e).

The burden then shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  The non-moving party cannot rest on its pleadings or merely reassert its previous allegations.  Fed. R. Civ. P. 56(e).  It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  Rather Rule 56(e) "requires the non-moving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the non-moving party who must set forth specific facts showing that there is a genuine issue of

material fact for trial. *Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

The Court must therefore grant a motion for summary judgment if Plaintiff, the non-moving party who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to his case. *See Muncie*, 328 F.3d at 873 (citing *Celotex Corp.,* 477 U.S. at 324.) However, in ruling on a motion for summary judgment, "a district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

Here, Plaintiffs have not filed a response to Defendant's motion. (Doc. # 27.) Summary judgment, however, cannot be granted solely because the non-moving party has failed to respond to the motion within the applicable time limit. *See Miller v. Shore Financial Services, Inc.,* 141 Fed. Appx. 417, 419 (6th Cir. 2005). The district court must, at a minimum, still examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden. *Miller.,* 141 Fed. Appx. at 419 (citing *Stough v. Mayville Cmty. Sch.,* 138 F.3d 612, 614 (6th Cir.

8

1998)). The district court, however, is "under no obligation to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *In re St. Clair Clinic, Inc*., No. 94-3943, 1996 WL 6531, at *2, (6th Cir. Jan. 8, 1996) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)) (citations omitted). Rather, the district court may rely upon the "facts presented and designated by the moving party." *In re St. Clair Clinic, Inc*.,1996 WL 6531, at *2 (quoting *Gaurino v. Brookfield Tp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992)). Furthermore, the district court is required to critically examine the accuracy and context of the evidence advanced by as well as consider inferences that are apparent from the designated evidence and favorable to the non-moving party. *In re St. Clair Clinic, Inc*.,1996 WL 6531, at *2; *Gaurino*, 980 F.2d at 402.

### B. Summary Judgment Analysis

Plaintiffs' alleged that Defendant wrongfully seized and failed to return both the money and the guns.

With respect to Gordon's money, the record reveals that at the time of his June 9, 1997, arrest, Gordon was in possession of $1,837.00. Subsequently, the police confiscated this amount. The record also shows that on or about January 28, 1998, the currency was converted to a check and placed in the FBI property room. (Doc. # 24.) Moreover, pursuant to the note that Gordon sent to the FBI authorizing release of this money, his "cellular phone, and any other property that [he] may own to Mikalyn J. Paolucci," the FBI released $1,837.00 to Ms. Paolucci on March 2, 1998. (Doc. # 28-2, Doc. # 28-3). Thus, Gordon voluntarily relinquished any right to ownership of the money and will not be heard to complain.

With respect to Plaintiffs' guns, the evidence shows that on January 9, 1998, the FBI also

9

seized three rifles in connection with an ongoing criminal investigation. Furthermore, on September 27, 2005, the FBI notified Diles by mail, advising her that in order to recover the three guns, she would have to prove ownership within thirty-days from the postmarked date of the letter. (Doc. # 28-5.) On April 24, 2006, the FBI filed a "Declaration of Abandonment" in reference to the three guns at issue. (Doc. # 28-6.) Diles failed to respond or otherwise present proof of ownership of the guns. The right to possession or ownership of the guns were therefore forfeited.

Thus, in light of the evidence, this Court finds that there is no genuine issue of material fact that suggests that Defendant confiscated wrongfully, injured, or lost Plaintiffs' guns or money.

## C. Conclusion

For the reasons aforementioned, this Court **GRANTS** Defendant's motion for summary judgment. (Doc. # 27.) The clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED**.

  /s/ Gregory L. Frost
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**